**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Carlos C. VICARIA, M.D., et al., Defendants–Appellees.**

No. 92–2450.

United States Court of Appeals, Eleventh Circuit.

Jan. 25, 1994.

[black redaction box]

James C. Preston, Jr., Tamra Phipps, William K. Watanage, David P. Rhodes, Asst. U.S. Attys., Tampa, FL, for plaintiff-appellant.

Douglas H. Stein, Stein, Warfman & Cooper, Miami, FL, for defendants-appellees.

[black redaction box]

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN *, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge:

This is an appeal by the United States from an order of the United States District Court for the Middle District of Florida granting the defendant Vicaria's motion for a new trial following his jury conviction of narcotics offenses. The court took that action because it concluded that it should have given a jury instruction setting forth the defense theory of the case. We hold that the district court did not abuse its discretion in granting a new trial, and therefore we affirm.

## I.

A four-count indictment charged the defendant, Dr. Vicaria, a practicing physician in Miami, Florida, and several others, with conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952 and 963, conspiracy to distribute and possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and importation, distribution and possession of cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 952 and 841(a)(1) and 18 U.S.C. § 2.

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Dr. Vicaria was tried separately. In the first trial, the jury could not agree and a mistrial was declared. In the second trial, the jury convicted Dr. Vicaria on all four counts.

A. 1. There was evidence from which the jury could have found the following:

Detective Guzman, operating in Tampa as an undercover agent, arranged with defendant Edwin Verdecia, from whom he had twice purchased cocaine, to provide a vessel that would be used to import cocaine. Guzman told Verdecia $20,000 front money would be required to obtain the vessel. Verdecia replied that he would discuss the venture with his friend, "Carlos" (later identified as the defendant Vicaria), a doctor in Miami.

Verdecia subsequently told Guzman that he had met with Vicaria, who had agreed to provide $15,000 for the venture, on the understanding that Vicaria could expect to receive $45,000 in return. Verdecia told Guzman that Vicaria had asked many questions regarding the details of the smuggling operation.

After a trip to Columbia, South America, to arrange for the transaction, Verdecia met with Vicaria at a Miami airport. Vicaria said he would try to provide $15,000, but was uncertain whether he could produce the full amount. Thereafter, Vicaria delivered $15,000 in cash to Verdecia, who gave the money to the captain of the vessel to be used in the smuggling. Less than two months later, 325 kilograms of cocaine were brought into Florida by the ship, which the government seized.

During this period, a court authorized interception of a cellular telephone Verdecia used in connection with the venture disclosed several calls between Verdecia and Vicaria in which the parties discussed the proposed importation. The intercepted calls also showed

Vicaria's concern about receiving the money from the venture.

2. Vicaria testified in his own defense and gave a totally different picture of what had happened. According to Vicaria, his friend Verdecia, whom he met in Miami in 1953 when they both came to the United States, called him to urge him to invest in a shrimp importing business he was planning to establish, explained the details of the business and its high profit potential, and stated that he needed $20,000 to start it. Vicaria agreed to make the investment, giving Verdecia $10,000 initially, and then another $5,000. Vicaria testified that when he gave the money to Verdecia, the latter did not tell him that it would be used to import drugs.

In a subsequent telephone conversation, Verdecia was evasive about the status of the venture, and ultimately admitted that the money was being used to import narcotics. Vicaria demanded his money back, and Verdecia said that he would return it as soon as he could. Vicaria refused Verdecia's requests for additional money for the scheme. Vicaria testified that he did not report the scheme to the authorities because he feared that, if he did so, he or his family might be harmed.

B. Vicaria submitted three proposed alternative lengthy jury instructions on "Defendant's Theory of the Case." Each proposed instruction set forth Dr. Vicaria's testimony giving his version of the facts. Two of the proposed instructions stated: "If you find that the Government has failed to prove, beyond and to the exclusion of every reasonable doubt, that this is not true, you must acquit Dr. Vicaria of all charges." These two proposed instructions also included an instruction on entrapment. The third proposed instruction, after discussing Vicaria's testimony at some length, stated: "If you find that this is true, you must acquit Dr. Vicaria of all charges. On the other hand, if you find that Carlos C. Vicaria knew of the illegal nature of the business proposition at the time he gave the $10,000.00 and $5,000.00 dollar amounts to Edwin Verdecia and

agreed to further the goals of the drug smuggling conspiracy, then you should find the Defendant, Carlos C. Vicaria, guilty."

The district court refused to give any of these proposed instructions, stating that they were "argumentative" and merely a statement of "the entire evidence in the case."

Following his conviction, Vicaria moved for a new trial on the ground, among others, that the district court should have given the theory of the defense instruction. At the conclusion of the sentencing hearing, at which the court also considered the motion for a new trial, the court stated:

> Well, on reflection and reading over the instructions, I think that the Court should have instructed the Jury on that theory of his defense. Since I didn't do that, I'm going to grant a new trial in the case.

In an earlier colloquy with counsel, the court had stated:

> Well, what he is saying is that the sole defense that he had was that he thought that he was merely making a loan to his friend to start a shrimp importing business. And that later on, he found out that the money was actually used in this conspiracy; that that scenario would not justify a verdict of guilty. . . .

> But if you believe that theory of his defense, that would require a verdict of not guilty. He says that where the Jury was confused is they felt that even though he gave the money for an innocent purpose, when he found out it was used for an improper purpose, that that was enough to convict him.

The court subsequently entered a written order that vacated Vicaria's judgment of conviction and granted his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

In a prior decision in this case, we held that the government's appeal was timely and stayed further proceedings in the district court pending that appeal. *United States v. Vicaria*, 963 F.2d 1412 (11th Cir.), *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 534 (1992).

## II.

Federal Rule of Criminal Procedure 33 states that, on motion of the defendant, the court "may grant a new trial to that defendant if required in the interest of justice." "The decision to grant or deny the new trial motion is within [the] sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion." *United States v. Wilson,* 894 F.2d 1245, 1252 (11th Cir.), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990). (citation omitted).

■ The government contends that the district court abused its discretion in granting a new trial because its original decision not to give the theory of the defense instruction was correct and the granting of the new trial was based upon the court's erroneous view that it had been required to give the instruction. The government states in its brief:

A requested theory of defense instruction, however, need only be given:

if the requested instruction "(1) was correct, (2) was not substantially covered by the court's charge to the jury, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense."

*United States v. Camejo,* 929 F.2d 610, 614 (11th Cir.) (quoting *United States v. Benz,* 740 F.2d 903, 910 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985)), *cert. denied,* [—— U.S. ——], 112 S.Ct. 228 [116 L.Ed.2d 185] (1991).

The government states that Vicaria's proposed instruction did not satisfy any of these criteria since (1) the instructions were incorrect because they improperly required the government to prove beyond a reasonable doubt that Vicaria's version of the facts was untrue; (2) the court's other instructions on intent, "knowingly" and "willfully" substantially covered the proposed instruction; and

(3) the failure to give the proposed instructions did not seriously impair Vicaria's ability to conduct his defense.

*Camejo* was an appeal from a conviction and we held that the district court had not abused its discretion in refusing to give a requested theory of defense instruction because that instruction did not satisfy the standard there specified. 929 F.2d at 614. It may well be that, if the district court here had denied a new trial, on an appeal from Vicaria's conviction we would have held that the court's refusal to give the requested instruction was not reversible error. The question before us, however, is the quite different one: whether the district court abused its discretion in granting a new trial because of its conclusion that it should have given a theory of defense instruction.

■ The basis for granting a new trial under Rule 33 is whether it is required "in the interest of justice." That is a broad standard. It is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous. Accordingly, the government's argument that the district court's initial refusal to give the theory of defense instruction was correct is unpersuasive in determining whether the district court abused its discretion in granting a new trial because of its failure to give the instruction.

In granting a new trial, the district court did not hold that it had committed legal error in refusing the defense instruction. Instead, it stated that "on reflection and reading over the instructions, I think that the Court should have instructed the Jury on that theory of his defense." In other words, upon reconsidering the matter, the Court concluded only that it "should have instructed the jury" on the defense theory, not that its failure to do so was legal error. A district court has broad discretion to determine what instructions to give and in what form. *United States v. Orr,* 825 F.2d 1537, 1542 (11th Cir.1987); *United States v. Gaines,* 690 F.2d 849, 856 (11th Cir.1982).

The district court acted within its discretion in deciding to grant a new trial. The case was a close one, as shown by the first

jury's inability to reach a verdict. Vicaria's credibility was crucial: if the jury believed his testimony that he thought he was investing in a shrimp importing business, he was not guilty of the narcotics offenses of which he was convicted. The district court's general instructions on intent, "knowingly" and "willfully" did not focus on Vicaria's contention that when he gave Verdecia $15,000, he believed he was investing in a shrimp importation business, not a drug venture. The district court pointed out that in seeking a new trial Vicaria contended that the jury was confused because it may have concluded that "even though he gave the money for an innocent purpose, when he found out it was used for an improper purpose, that that was enough to convict him." The district court justifiably concluded that a theory of defense instruction, although not necessarily in the form Vicaria had proposed (*see Gaines*, 690 F.2d at 855–56), would have helped the jury in resolving these questions.

The present case is unlike *United States v. Cox*, 995 F.2d 1041 (11th Cir.1993), which the government cited to us as supplemental authority. In *Cox*, the district court granted a new trial in a mail fraud case "because it thought that the evidence supporting the jury's finding of fraudulent intent might be a bit thin and, thus, that Cox may have suffered a miscarriage of justice." 995 F.2d at 1043. This court reversed, stating that "when the jury verdict is set aside usual deference to the trial judge conflicts with deference to the jury on questions of fact. When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent...." 995 F.2d at 1044 (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984)). The court stated in *Cox:* "We may conclude that the district court overreached its authority by granting a new trial if our review of the record reveals that the evidence did not preponderate heavily against the jury's verdict. In this case, the evidence does not contravene—on the contrary, it fully supports—the verdict. Accordingly, we reverse." 995 F.2d at 1044.

Unlike *Cox*, the present case involves the granting of a new trial not for alleged insuffi-ciency of evidence, but because the district court concluded that it should have given an instruction it had declined. The district court here questioned not the sufficiency of the evidence to support the jury's factual determination (as in *Cox*), but the soundness of its prior ruling on a matter particularly within its discretion. *Cox* does not undermine our conclusion that, in the significantly different circumstances of this case, the district court did not abuse its discretion in granting a new trial.

In sum, we hold that, considering all the circumstances of this case, the district court did not abuse its discretion in granting Vicaria a new trial.

The order of the district court granting a new trial is AFFIRMED. The stay of proceedings in the district court is dissolved.