[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15125

_____

D. C. Docket No. 06-00379 CR-J-25-MCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 30, 2009
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD STEVEN SWEAT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 30, 2009)

Before EDMONDSON, Chief Judge, ANDERSON and COHILL,[*] Circuit Judges.

---

[*] Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

PER CURIAM:

This case involves an off-the-record (unrecorded and no transcript), private (no counsel was present) talk by a District Judge with the members of a jury who were in the process of deliberating the issue of guilt or innocence in a felony trial;[1] the jury had some hours earlier notified the Judge that it believed it was deadlocked and had been given a modified Allen[2] charge less than 2 hours before the pertinent conversation. The off-the-record visit by the Judge in the jury room -- that is, not in open court -- was without prior knowledge or consent of the lawyers in the case. The Judge's conduct constitutes error. The question is whether the error, given the circumstances of this case, is a reversible error.[3]

No one contends that the District Judge intended to compel the jury to do anything.

---

[1] The terms "ex parte communication" and "private conference," among other descriptions, are used throughout the trial court motions and appellate briefs. Because the usual definition of "ex parte communication" is "[a] generally prohibited communication between counsel and the court when opposing counsel is not present" -- not an exact description of the pertinent conversation in this case -- we do not use that term here. Black's Law Dictionary 597 (7th ed. 1999).

[2] Allen v. United States, 164 U.S. 492, 501-02 (1896).

[3] Defendant Richard Sweat makes other arguments on appeal: insufficient evidence; an incorrect instruction about the Internet; and improper denials of motions to suppress and in limine. We conclude that they lack significant merit.

BACKGROUND

*Defendant's Motion for New Trial*

The first time the defense raised this issue was Defendant's Motion for New Trial, which was filed 31 May 2007: six days after the jury had been dismissed. The pertinent portion of Defendant's motion read this way:

> [T]he Court had a brief private conference with the jury during deliberations that was not held in open court. Although the undersigned is confident the Court would not say or do anything in an effort to sway a decision one way or the other, the private communication is impermissible under the rules and may have caused the jury to reach a verdict when there was indication that the jury was deadlocked prior to that communication.

On 3 August 2007, the district court denied the Motion for New Trial. In the order denying the motion, the District Judge described the private conversation:

> The Court entered the jury room in the early evening of May 25, 2007, to determine if the jury wanted to return the following day, Saturday. The Court was informed that the jury was about to conclude its deliberations and immediately left the jury room without any further discussions.

3

*Defendant's Motion to Reconsider Motion for New Trial*

Defendant's Motion to Reconsider Motion for New Trial, which was filed 14 September 2007 (42 days after the denial of new trial and over three months after the jury had been dismissed), asked the district court to reconsider its decision about the private conversation. The motion claimed that the lack of a record of the communication between the Judge and the jurors was particularly problematic. The motion argued that, without a record, it was difficult to rule out the possibility that the conversation interfered with the jury deliberations. The motion also stressed that the communication occurred on a Friday at the start of Memorial Day weekend, which -- according to Defendant -- made it more likely that the conversation might have inadvertently pressured some jurors to change their minds: not because they were convinced of guilt beyond a reasonable doubt, but because they would have had to return to deliberations on Saturday if they did not decide immediately. The guilty verdict came in a little before six o'clock on the Friday evening.

In the Motion to Reconsider Motion for New Trial, Defendant requested that, if the district court was inclined to find the private communication to be

4

harmless error, the court should conduct an evidentiary hearing before finally

deciding the issue. This request was the first for an evidentiary hearing. No

hearing was held. The Motion to Reconsider Motion for New Trial was denied.


DISCUSSION


We review the district court's denial of a motion for new trial for abuse of

discretion. United States v. Pedrick, 181 F.3d 1264, 1266-67 (11th Cir. 1999).

We review non-constitutional errors for harmlessness.[4] United States v. Mathenia,

409 F.3d 1289, 1292 (11th Cir. 2008). When we apply the harmless error

standard, the government has the burden of establishing that the error was

harmless. United States v. Robison, 505 F.3d 1208, 1222 (11th Cir. 2007). The

government meets its burden for a non-constitutional error when we are convinced

that "the error did not affect the verdict or had but very slight effect"; we review

the trial record in its entirety when making the determination of harmless error.

---

[4]We are less than convinced that Defendant properly challenged the Judge's private conversation with the jury on constitutional grounds. But even if he has contended for constitutional error, we conclude that the communication does not amount to one because it took place at a time when evidence was not being presented and it was brief and ministerial -- not impacting on Defendant's opportunity to defend against the charge. See generally United States v. Gagnon, 470 U.S. 522, 526-27 (1985); United States v. Harris, 491 F.3d 440, 452 n.5 (D.C. Cir. 2007).

United States v. Hornaday, 392 F.3d 1306, 1315 (11th Cir. 2004) (internal

quotations omitted); see also Kotteakos v. United States, 328 U.S. 750, 764

(1946).

Unless all counsel have consented, a private conference between a judge

and a deliberating jury outside the presence of counsel is of serious concern and

should be avoided. We accept the contact in this case is error in violation of Fed.

R. Crim. P. 43, which "affords the defendant the right to be present at all stages of

his trial, including presence during communication between court and deliberating

jury." United States v. Benavides, 549 F.2d 392, 393 (5th Cir. 1977).

Nevertheless, not every violation of Fed. R. Crim. P. 43 demands a new trial. Id.;

see also Rushen v. Spain, 464 U.S. 114, 118 (1983) (rejecting circuit court's

conclusion that no unrecorded communication between judge and jury can be

harmless error).

When Defendant first complained of the private conversation in the Motion

for New Trial, the jury had already been dismissed for six days; and no evidentiary

hearing was requested.[5] Defendant never requested an evidentiary hearing on the

communication until the Motion to Reconsider Motion for New Trial. This

---

[5]Because we do not know when Defendant learned about the communication, we have given him the benefit of assuming that once he knew about it, he immediately filed his initial Motion for New Trial.

second motion was filed 42 days after the denial of the Motion for New Trial and over three months after the jury had been dismissed.[6] Given the inherent concerns about recalling and interrogating jurors, plus the likely fogging of memories with the passage of time from the end of the trial, we conclude that the district court did not abuse its discretion in declining to hold an evidentiary hearing. See United States v. Massey, 89 F.3d 1433, 1443 (11th Cir. 1996) (motion for new trial) ("We review the district court's denial of an evidentiary hearing for abuse of discretion.").

In the absence of an evidentiary hearing, we accept as fact the District Judge's description of what happened. He memorialized his description of the events in his order denying the Motion for New Trial; we treat his written words as, in effect, testimony offered in an affidavit.

Based on the Judge's statement (which we credit fully), his private conversation with the jury did not touch on facts in controversy, points of law, or anything bearing on guilt or innocence. The jury did not deliberate or vote in the Judge's presence and asked him no questions. The Judge gave the jury no instructions. His inquiry was brief and ministerial: he asked the jury if it wanted to

---

[6]Jury was dismissed 25 May 2007; Motion for New Trial was filed 31 May 2007; Motion for New Trial was denied 3 August 2007; Motion to Reconsider Motion for New Trial was filed 14 September 2007; Motion to Reconsider Motion for New Trial was denied 18 September 2007.

return the following day and then left immediately when the jury informed him that it was about to conclude its deliberations.

Because the pertinent communication is not a constitutional error, we ask only whether the government has established "with fair assurance . . . that the judgment was not substantially swayed by the error . . . ." Kotteakos, 328 U.S. at 765; Hornaday, 392 F.3d at 1316 ("The Kotteakos harmless error standard was explicitly followed in many decisions of [the Eleventh Circuit]."). Here, it seems that the Judge did not enter the jury room until some time after the jury had been given the Allen charge. We do not know that the jury remained truly deadlocked after it received the Allen charge, which asked the jury to continue deliberating. And we accept that the jury was aware that it was conferring on a Friday afternoon. When the Judge entered the jury room, he was told without delay that the jury was about to conclude its deliberations. From that statement, we infer the jury was already close to finishing its work; so, we can infer that the Judge's visit had little or no impact of any kind on the jury's verdict -- even the verdict's timing. We conclude that the judgment was not substantially swayed by the error: the error was harmless.

In our supervisory capacity, we caution trial judges to avoid private conversations (especially unrecorded conversations) with juries (particularly

deliberating juries).  At a minimum, these talks are an invitation to post-trial litigation.  Still, in this case, the District Judge -- who knew the most about all that had happened during the total trial -- in effect, found and concluded that Defendant was not prejudiced by the Judge's brief, ministerial contact with the jury. And given the evidence against Defendant at trial, the circumstances of the private conference, and our standard of review, we cannot conclude that the District Judge erred in denying a new trial.

AFFIRMED.